# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN   DIVISION AT DAYTON

UNITED STATES OF AMERICA,              :

                       Case No. 3:15-cr-131

                Plaintiff,

    -vs-                        District Judge Timothy S. Black
                         Magistrate Judge Michael R. Merz

GARY A. MAURER,

                Defendant.     :

## REPORT AND RECOMMENDATIONS

This case is before the Court for Report and Recommendations on the limited issue of a determination of the amount of restitution properly owed by Defendant Gary A. Maurer.

On September 24, 2015, a federal grand jury indicted Mr. Maurer on three counts of embezzlement and theft from an employee pension or welfare benefit fund in violation of 18 U.S.C. § 664 and one count of embezzlement and theft from an employee health care benefit fund in violation of 18 U.S.C. § 669. (Indictment, ECF No. 3.) The parties engaged in plea negotiations but reached an impasse as to the appropriate amount of restitution. (See February 16, 2016, Minute Entry and Notation Order.) The parties requested that District Judge Black refer the matter to a United States Magistrate Judge for the limited purpose of holding an evidentiary hearing to determine the amount of restitution owed so that the parties may proceed with finalizing the plea

1

agreement. *Id.* Pursuant to 28 U.S.C. § 636(b)(A) and (b)(3) and at the request of the parties, on February 23, 2016, Judge Black referred the matter to the undersigned. (ECF No. 13.) On March 25, 2016, the Magistrate Judge held an evidentiary hearing in accordance with the Order of Reference. (ECF Nos. 14 and 15.)

Chris Greenwood testified at the hearing that he is a senior investigator for the U.S. Department of Labor, Employee Benefit Security Administration, that he served as case agent and investigated the present case against Mr. Maurer including the preparation of the Indictment, and that during his investigation of the present matter, he became aware of a prior civil matter directly related to the present criminal case.[1] (Transcript of Mar. 25, 2016 Hearing, ECF No. 15, at PageID 102-105.) Mr. Greenwood also testified that he had prepared the Government's exhibits which reflect the results of his investigation and which identify a total of seven victims, three of which are relevant to the present case, and the amounts of their losses in this case. Government Ex. 5 reflects the following relevant victims and their losses:

1. Iron Workers District Council of Ohio and Vicinity Benefit Trust--$110,903.13

2. Iron Workers District Council of Ohio and Vicinity Pension Trust--$148,467.10

3. Iron Workers District Council of Ohio and Vicinity Annuity Trust-- $51,090.07

*Id.* PageID 105-111[2]. Mr. Greenwood further testified that the Government has calculated the overall outstanding restitution in this case as $310,460.30. *Id.*

---

1. The related civil matter is *Iron Workers District Council, etc., et al, v. G.M.A.B. LLC, et al.*, No. 3:13-cv-283 (S.D. Ohio filed Aug. 23, 2013). In that case, Mr. Maurer was identified as the owner and/or principal officer and principal shareholder of Defendant GMAB, LLC, and was sued personally for breaching his fiduciary duties in violation of Section 409 of ERISA, 29 U.S.C. § 1109 and for engaging in prohibited transactions in violation of Section 406 of ERISA, 29 U.S.C. § 1106. *Id.* ECF No. 1, PageID 3, 5-6, 15-16. Currently, that matter is pending on post-judgment motions. (See *Id.*, ECF Nos. 20 through 148 in Case No. 3:13-cv-283.)

2. Mr. Greenwood identified the four additional victims and the amounts of their losses as: Thomas and Marker Construction Company ($57,500.00), The Quandel Group, Inc. ($39,436.65), Coast Machinery Movers, Inc. ($45,000.00), and Erie Insurance Company ($20,000.00).

Mr. Greenwood then testified that he had prepared Government Ex. 6 which reflects Mr. Maurer's assets and liabilities which he was able to obtain from information received by executing public records searches, civil judgment documents, some credit reports, and some of Mr. Maurer's personal bank information. *Id.* PageID 111. Specifically, Mr. Greenwood testified that Mr. Maurer's assets consisted of his residence and two vehicles for a total value of $184,498.00, and that his liabilities consisted of loans in the amount of $254,027.00 and civil judgments and liens in the amount of $446,909.00 for a total of $700,936.00 in liabilities. Mr. Greenwood testified further that he had prepared Government Ex. 7 which reflected that, at the time Mr. Greenwood prepared the exhibit, Mr. and Mrs. Maurer's monthly income was $8,462.61, their monthly expenses totaled $3,944.84, and that their total monthly net income was $4,571.77. *Id.* PageID 115-16. Mr. Greenwood also testified that there are additional items of normal day-to-day living expenses "such as gasoline, auto expenses, etc." that he had not included in Government Ex.7. *Id.* PageID 116. Mr. Greenwood then testified that he had made a "cursory review" of Mr. Maurer's anticipated testimony about his monthly income and expenses, compared that information with Government Ex. 7, and determined that "the bottom line figures" were "very similar" and that there was a $1.00 difference between Government Ex. 7 and what Mr. Greenwoood anticipated Mr. Maurer would offer as his monthly income. *Id.* PageID 117. Finally, Mr. Greenwood testified that in his opinion a proper restitution amount in this case would be $2,000.00 a month. *Id.* PageID 117-18.

On cross-examination, Mr. Greenwood testified that: (1) he was not aware of Mr. Maurer's current employment status; (2) he does not have any documents that would dispute that Mr. Maurer does not currently have a $1,535.57 monthly income that he (Mr. Greenwood) had considered in making his calculations about Mr. Maurer's income; (3) the Social Security figure

3

upon which he relied includes Mr. Maurer's wife's Social Security payment; (4) the income figure he relied upon for Mrs. Maurer is based on 13-month average and he does not have any documentation about her current income; (5) the expense figure identified as one for the Internal Revenue Service (IRS) is based on checks he saw and not on any specific agreement between Mr. Maurer and the IRS; and (6) the expense list is not complete in that it does not include such things as food and gasoline or other miscellaneous expenses. *Id.* PageID 118-121. Mr. Greenwood also testified on cross-examination that he may have misinterpreted Mr. Maurer's exhibit and he now realizes that the $1.00 difference between his (Mr. Greenwood's) and Mr. Maurer's figures is with respect to his calculation of Mr. Maurer's income and Mr. Maurer's calculation of his expenses. *Id.* PageID 121-122. Finally, Mr. Greenwood testified on cross-examination that his figures were not based on the most up-to-date income figures nor did they reflect the most complete monthly expenses. *Id.* PageID 123.

Mr. Maurer testified at the hearing that with respect to the income section on Government Exhibit 7: (1) he has to pay taxes on his $4, 091.52 monthly pension benefit; (2) of the $2, 322.00 monthly Social Security benefit, $1,550.00 is his benefit and he has to pay taxes on that benefit; (3) he does not currently have the $1,537.00 monthly income from American Builders; (4) his entire monthly income is his pension and his Social Security benefit; and (5) his wife's income from Dollar General listed as $588.44 a month is not an up-to-date figure because Mrs. Maurer stopped working for Dollar General as an assistant manager when she had hip surgery and had only recently returned to work. *Id.* PageID 144-148. In conjunction with and referring to Defendant's Exhibits A through P which document his expenses, Mr. Maurer's testimony included: (1) his current outstanding balance for dental expenses for him and his wife is $942.55; he pays $100.00 per month on that balance, (Ex. A), and there are projected additional expenses of $1,000.00 for

4

himself and $1,100.00 for his wife (no documentation); (2) his wife visits a chiropractor once a week and the co-pay is $27.00 (Ex. B); (3) there is a $16, 906.84 balance on a loan he took to try to keep his business going and he pays $367.54 a month on that loan (Ex. C); (4) he has a balance of about $40,000.00 on loans he took to finance his children's educations (no documentation) and pays $435.44 a month on those loans (Ex. D); (5) there is a balance of about $4, 500.00 on a loan he took to pay outstanding bills (no documentation) and he pays $145.70 a month on that loan (Ex. E); (6) there are two separate car payments—one is for a 1996 Chevy truck on which the engine blew and on which there are four payments of $123.55 remaining, (Ex. E), and the other is for a 2004 truck on which there are an unknown number of payments remaining each in the amount of $414.49 (Ex. E) (for total vehicle loan payments of $518.30 a month); (7) he has a home mortgage on which he owes approximately $130,000.00 with a monthly payment of $1,064.07 (Ex. F); (8) he has a second mortgage on his home on which he owes about $39,684.98 with a monthly payment of $398.01 (Ex. G); (9) he owes "probably" $18,000.00 to the IRS for back personal taxes (no documentation) and based on an informal agreement with IRS pays $200.00 a month towards that debt (Ex. H); (10) he pays $42.75 per month for trash collection (Ex, I); (11) the 2013 Buick LaCrosse vehicle that the Government has identified as an asset is a leased vehicle, it is leased in his wife's name, the payment is $377.88 per month, and the lease expires on June 23, 2016 (Ex. J); (12) he pays $391.00 a month for vehicle insurance (Ex. K); (13) the premium for life insurance on his wife is $44.07 a month, (Ex. L), and his life insurance premium is $110.00 quarterly (no documentation); (14) he pays a monthly charge for television and internet access of $239.12 (Ex. M); (15) Verizon bills him $96.85 per month for service to two cell phones—one for him and one for his wife—and he has a past-due balance of $151.78 (Ex. N). *Id.* PageID 149-160.

In addition to testifying about Defendant's Exhibits A through N, Mr. Maurer testified

about monthly expenses for which he did not present documentation. *Id.* PageID 161-167. Specifically, Mr. Maurer testified that he has the following monthly expenses: (1) $23 per month for his wife's eye care; (2) an estimated charge of $200.00 per month for Dayton Power and Light (electricity); (3) an estimated charge of $65.00 per month for water; (4) an estimated cost of $800.00 per month for household expenses including food, cleaning materials, medicine, vitamins, and miscellaneous; (5) Medicare supplemental insurance cost of $219.45 per month; (6) cost of insurance for dental and eye care of $62.00 per month; (7) expense of approximately $200.00 per month for clothing; (8) a goal of saving $700.00 per month to pay taxes on pension and Social Security benefits. *Id.*

On cross examination, Mr. Maurer testified that he would like to keep any monthly restitution payment "low enough to do" and that if he could get some employment he could "increase it or do something better or double up on it or something," but that he could not start with a very big number and he suggested a payment of $200.00 per month. *Id.* PageID 170-71. In addition, Mr. Maurer testified that he does not "quibble" that he owes a debt to the various benefit pension and healthcare trust funds, and that at the present time with respect to paying his monthly expenses, he pays "whatever [he] needs to keep with lights and stuff on." *Id.* PageID 174-175.

In response to questions from the Court, Mr. Maurer testified that he has supplemental dental insurance that pays up to $1,000.00 per year, and that after the lease on his wife's car expires, he could either get a new car or buy the leased car outright for $340.00. *Id.* PageID 176-177[3.] Mr. Maurer also testified that he is paying a substantial amount on student loans for his children, he has four female children all of whom are in their 30s, three of his children are

---

3. It is not clear from Mr. Maurer's testimony whether he will be able to buy the leased automobile for a one-time payment of $340.00 or for an unknown number of additional monthly payments in the amount of $340.00.

6

employed and one is a homemaker who is married to someone who is employed, and that only his first (runs a boutique) and second (teacher) children received any money from him and the third (homemaker) and fourth (attorney) children did not receive any. *Id.* PageID 177-178. Finally, Mr. Maurer testified that the $800.00 monthly grocery bill, the expense he identified as "Kroger and Walmart", is for only him and his wife. *Id.* PageID 181.

In response to additional questions from his counsel, Mr. Maurer testified that the student loans at issue are parent-plus loans for which he signed, his children took out additional loans on which they are still paying, and that the loans on which he is paying are loans he agreed with the bank to pay and for which he is obligated to pay. *Id.* PageID 179.

While this matter is in the "plea negotiation" stage, the Court finds that several sections of Title 18 of the United States Code are instructive with respect to resolving the present issue.

Section 3663 of Title 18 of the United States Code provides that when sentencing a defendant convicted of an offense under, *inter alia,* Title 18 the court may order, in addition to any other penalty authorized by law, that the defendant make restitution to a victim of the offense. Further,

> (B)(i)The court, in determining whether to order restitution under this section, shall consider—
>
> (I) the amount of the loss sustained by each victim as a result of the offense; and
>
> (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3663.

Section 3664 of Title 18 provides in part:

(a) For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report…information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

...

(e) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. …

(f)(1)(A) In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

(B)…

(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

   (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

   (B) projected earnings and other income of the defendant; and

   (C) any financial obligations of the defendant; including obligations to dependents.

(3)(A) A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specific intervals, in-kind

8

> payments, or a combination of payments at specified intervals and in-kind payments.
>
> (B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

18 U.S.C. § 3664.

Section 3664 of Title 18 requires a district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court *and without consideration of the economic circumstances of the defendant.*" *United States v. Bogart,* 576 F.3d 565, 573 (6th Cir. 2009), citing 18 U.S.C. § 3664(f)(1)(A) (emphasis in original); (additional citation omitted). "A district court therefore may 'consider ability to pay *only* when establishing the schedule of payment.' " *Id.* (citation omitted).

> Although a court cannot take into account the financial circumstances of a defendant in determining *whether* to award restitution, the statute provides that district courts must evaluate a defendant's ability to pay when establishing the manner and schedule of restitution payments *See* 18 U.S.C. §3664(f)(2). Specifically the MVRA directs the courts to consider "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;" *id.* §3664(f)(2)(A), "projected earnings and other income of the defendant; and *id.* § 3664(f)(2)(B), "any financial obligations of the defendant; including obligations to any dependents," *id.,* § 3664(f)(2)(C).

*Bogart,* 576 F.3d at 574. A district court may consider a defendant's "education and entrepreneurial talents" and potential earning capacity in setting a restitution payment schedule. *Id.*, at 574-75 (citation omitted).

"A restitution order may provide that the defendant pay the amount owed in one lump sum, in period payments or, if economic circumstances dictate, in nominal periodic payments until the

restitution amount is paid in full." *United States v. Davis,* 306 F.3d 398, 425 (6th Cir. 2002), *cert. denied,* 537 U.S. 1208 (2003), citing 18 U.S.C. § 3664(f)(3)(A) and (B).

At the outset, the Court notes that there is no evidence that contradicts the government's calculation as to the total amount of restitution due in this case; that is, that Mr. Maurer owes the trusts from which he admittedly stole/embezzled the sum of $310,460.30. However, while the government recommends a payment amount of $2,000.00 per month, Mr. Maurer has suggested a payment of the more modest amount of $200.00 per month. For the following reasons, the Court finds that an amount of $1,150.00 is a reasonable monthly restitution payment.

In general, and based on the evidence introduced at the hearing, this Court accepts Mr. Maurer's allegations as to his monthly expenses with some modifications. Those modifications are as follows.

Mr. Maurer's own testimony establishes that the expense for the leased vehicle would stop at the end of June, 2016. Therefore, the amount of $377.88 should be deducted from his claim of expenses. In addition, the debt for the 2004 Dodge truck should have been satisfied by the end of July 2016 so the $123.55 monthly payment for the truck should be eliminated. Finally, the Court notes that Mr. Maurer claims an expense of $800.00 per month for food and miscellaneous items. However, federal government guidelines provide that the average family of two in the 51-70 year-age group incurs $365.60 a month when on a thrifty plan, $471.50 a month when on a low-cost plan, $587.40 when on a moderate-cost plan, and $707.30 a month when on a liberal plan. http://www.cnpp.usda.gov/USDAFoodPlansCostofFood. Accordingly, allowing Mr. Maurer to spend in accordance with a "moderate-plus-cost plan" of $625.00 per month, $150.00 in food expenses should be eliminated. The total amount of deduction from Mr. Maurer's claimed expenses should be $651.43. Mr. Maurer, then, would have $651.43 additional in discretionary

10

income per month.

In addition, the Court notes that although Mr. Maurer is currently unemployed, he has a long history of being employed and involved in the construction industry, factors which this Court is permitted to consider. See *Bogart,* 576 F.3d at 574-75. Mr. Maurer testified that he was last employed as an estimator in the building industry. ECF No.15, PageID 172. Mr. Maurer essentially testified as to his willingness to "get some employment". *Id.* PageID 170. Information prepared by the United States Department of Labor Bureau of Labor Statistics indicates that in May, 2015, a cost estimator in the construction industry earned between $16.69 and $48.35 an hour. www.bls.gov/oes/current/oes131051.htm. Information from the State of Ohio Department of Commerce shows that in Ohio, the current minimum wage is $8.10 an hour. www.com.ohio.gov/documents/dico_2016Minimumwageposter.pdf. Therefore, even assuming that Mr. Maurer is not able to obtain employment as a cost estimator with an income of between $16.69 and $48.35 an hour, the Court is not hesitant to attribute to Mr. Maurer the ability to find a full-time minimum wage job. That would give Mr. Maurer additional after-taxes income of approximately $1,020.00 per month. When added to the additional $651.43 discretionary income, Mr. Maurer would have a total of $1, 671.43 in discretionary income.

As noted above, Mr. Maurer has suggested a restitution payment of $200.00 per month. ECF No. 15, PageID 170-71. Considering the discretionary income of $1, 671.45, which the Magistrate Judge finds it appropriate to attribute to Mr. Maurer, and adding it with the $200.00 payment Mr. Maurer has suggested, the total figure is $1871.43. Assuming that Mr. Maurer is able to secure, at best, part-time minimum wage employment and attributing only $510.00 additional monthly income to Mr. Maurer, the final figure is $1,351.43.

With these facts in mind, this Court concludes that the total amount of restitution Mr.

11

Maurer owes to the victims in this matter is $310,460.30 and that a reasonable monthly payment amount for restitution is $1,150.00.

It is therefore recommended that the total amount of restitution Mr. Maurer owes to the victims in this matter is $310,460.30. It is also recommended that a reasonable monthly payment amount for restitution is $1,150.00.

September 27, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

J:docs_Maurer_R&Rdraft_restitution

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).